In the District Court of the United States        RECEIVED
For The District of South Carolina    USDC CLERK. CHARLESTON. SC
BEAUFORT DIVISION
2005 NOV 17  A 10: 43

| | |
|---|---|
| Michael Smith, #305363, | ) Civil Action No.  9:05-1012-HFF-GCK |
| Plaintiff, | ) |
| | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| | ) **OF THE MAGISTRATE JUDGE** |
| T. Rogers, Investigating Officer; Greenville | ) |
| County Sheriff's Department; Sheriff of | ) |
| Greenville County (Name Unknown); and | ) |
| Greenville County Deputy Sheriff (Name | ) |
| Unknown), Individual and Official Capacities, | ) |
| | ) |
| Defendants. | ) |

## I. INTRODUCTION

The Plaintiff Michael Smith ("Plaintiff" or "Smith") is incarcerated at Kershaw

Correctional Institution ("KCI").  Proceeding *pro se*, he seeks relief from the above-captioned

Defendants, T. Rogers, Investigating Officer,[1] ("Rodgers"), Greenville County Sheriff's

Department, Sheriff of Greenville County (Name Unknown) (the "Sheriff") and Greenville

County Deputy Sheriff (Name Unknown) (the "Deputy Sheriff") in their individual and official

capacities, for alleged violations of Plaintiff's civil rights under 42 U.S.C. § 1983.[2]  Plaintiff

---

[1]    The correct spelling of this defendant's surname is "Rodgers", as he will be referred to in this Report and Recommendation.

[2]    42 U.S.C. §1983 provides, in pertinent part:  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

seeks monetary damages.

Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

## II.  THE *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. Hughes v. Rowe, 449 U.S. 5, 9 (1980) (*per curiam*);  Estelle v. Gamble, 429 U.S. 97 (1976); Haines v. Kerner, 404 U.S. 519 (1972);  Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978).  Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Publ L. No. 104-132, Title I, § 104, 110 Stat. 1214, codified at 28 U.S.C. § 2254.  This review has been conducted in light of the following precedents:  Denton v. Hernandez, 504 U.S. 25 (1992); Neitzke v. Williams, 490 U.S. 319, 324-25 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Maryland House of Correction, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983).



*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. at 9.  Even under this less stringent standard, however, the *pro se*

---

declaratory decree was violated or declaratory relief was unavailable.

complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him (Small v. Endicott, 998 F.2d 411, 417-18 (7th Cir. 1993)), nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied,* 475 U.S. 1088 (1986).

### III.   *IN FORMA PAUPERIS* ACTION

Plaintiff brought this action *in forma pauperis* ("IFP") under 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without paying the administrative costs before proceeding with the lawsuit. [2-1] To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious."[3] A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25, 31 (1992). Hence, under Section 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte.* Neitzke v. Williams, 490 U.S. 319 (1989); Allison v. Kyle, 66 F.3d 71 (5th Cir. 1995). The court may dismiss a claim as "factually frivolous" under § 1915(e) if the facts alleged are clearly baseless. Denton v. Hernandez, supra. In making this determination, the court is not bound to accept without

---

[3]     28 U.S.C. §§ 1915(e)(2)(B)(i), (ii).

question the truth of the plaintiff's allegations, but rather need only weigh the plaintiff's factual allegations in his favor. Id.

## IV. FACTUAL BACKGROUND

Defendant Rodgers began employment in 1981 as a Sheriff's Deputy with the Greenville County Sheriff's Department. In that capacity, Rodgers spent several years in the narcotics unit, and also worked for the DEA and FBI.[4] In May 2002, Rodgers began an investigation into a Jamaican drug trafficking organization operating in the Greenville, South Carolina area.[5] Pursuant to this investigation, on May 30, 2002, a confidential informant made a controlled purchase of cocaine while in a hotel room in Greenville, South Carolina. The confidential informant identified the Plaintiff as one of two individuals present in the hotel room immediately prior to this purchase.[6]

On September 1, 2002, United States Customs agents arrested Jimmie Boatwright ("Boatwright"), at Harts Field International Airport in Atlanta, Georgia, and found him to be carrying over 400 grams of cocaine in 45 pellets which he had swallowed in Jamaica. After this arrest in September 2002, a joint investigation was initiated between the Resident Agent in Charge Greenville (RAIC/Greenville) office of the United States Customs Department and the Greenville County Sheriff's office. Rodgers was present on September 17, 2002, when Special Agents Dayna Gilliam, RAIC/Greenville, and Matthew Saylor, RAIC/Harts Field, interviewed



---

[4]    See Affidavit of Tony Rodgers ("Rodgers Affidavit") at ¶¶ 1-3, attached to Memorandum in Support of Defendants' Motion for Summary Judgment ("Defendants' Memorandum"). [12-1]

[5]    See Rodgers Affidavit at ¶ 4, attached to Defendants' Memorandum. [12-1]

[6]    See Rodgers Affidavit at ¶¶ 5-6, attached to Defendants' Memorandum. [12-1]

Boatwright, who identified Plaintiff as the person who introduced him to the leader of the Jamaican drug trafficking organization.[7] Rodgers interviewed a second confidential informant who also identified Plaintiff as one of the co-conspirators in the drug trafficking organization.[8]

Based on the above information obtained by Rodgers during his investigation, Rodgers swore out a warrant for the arrest of Plaintiff on suspicion of conspiracy to traffic cocaine under South Carolina law. On October 28, 2002, South Carolina Magistrate Dean Ford issued an arrest warrant for Plaintiff, and Deputy Stephen M. Kay of the Greenville County Sheriff's Department arrested the Plaintiff, who was arraigned before South Carolina Magistrate James Hudson, and was denied bond.[9]

Several other suspects also were arrested pursuant to the investigation into the Jamaican drug trafficking organization. The Greenville County Solicitor's Office was subsequently advised by the U.S. Attorney's Office that these suspects, including the Plaintiff, would be indicted by a Federal Grand Jury. Based on this information, the state charges against these suspects were dropped by Assistant Solicitor Mark Moyer, citing prosecutorial discretion. The U.S. Attorney's Office also exercised prosecutorial discretion, and ultimately decided not to proceed with the indictment of the Plaintiff. The Plaintiff, who had remained in the custody of

---

[7]    *See* Rodgers Affidavit at ¶ 7, attached to Defendants' Memorandum.  [12-1]

[8]    *See* Rodgers Affidavit at ¶ 8, attached to Defendants' Memorandum.  [12-1]

[9]    *See* Rodgers Affidavit at ¶¶ 9-10, attached to Defendants' Memorandum.  [12-1]

the Greenville County Sheriff's Department for eight (8) months, was released in June 2003.[10]

After Plaintiff's release, he was arrested for an unrelated incident involving the trafficking of cocaine, and subsequently convicted. He is currently incarcerated in KCI in Kershaw, South Carolina.

## V. PROCEDURAL HISTORY OF THIS ACTION

On March 25, 2005, Plaintiff filed the above-captioned lawsuit against Rodgers, the Sheriff, and the Deputy Sheriff (collectively, the "Defendants") as a result of his eight (8) month detention by the Greenville County Sheriff's Department in 2003.[11] [1-1] He alleges that there was no probable cause for his arrest and detention, he was never informed of his rights, he was denied access to an attorney, and he was denied a preliminary hearing. He seeks relief under Section 1983, claiming $950,000 in compensatory damages, $950,000 in punitive damages, and $10,000 in out-of-pocket expenses.

On May 9, 2005, the Defendants answered Plaintiff's complaint, [10-1] and on June 23, 2005, the Defendants filed a motion for summary judgment. [12-1] On June 24, 2005, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the undersigned advised the Plaintiff of the summary judgment procedure and the possible consequences if he failed to respond adequately. [13-1] On August 2, 2005, the Plaintiff filed a motion for an extension of time on



---

[10]    *See* Plaintiff's Complaint [1-1] at p. 4 *and* Defendants' Answer [10-1] at p. 1, ¶ 4. As Plaintiff was not convicted of the charge, Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) does not apply to bar this action.

[11]    In the event that a limitations issue arises in the above-captioned case, the Plaintiff will have the benefit of the holding of Houston v. Lack, 487 U.S. 266 (1988) with respect to the delivery date of his Complaint. [3-1]

the grounds that he had been ill. [15-1]  On August 3, 2005, the Court issued an Order [16-1] which granted Plaintiff an extension of time until August 13, 2005.  [16-1]

The Plaintiff failed to file a response by August 13, 2005, and thus it appeared to the undersigned that the Plaintiff no longer wished to pursue this action.  Accordingly, on August 15, 2005, the undersigned issued a Report wherein it was recommended that the action be dismissed for lack of prosecution pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.  [17-1] On that same day, but after the Report was filed, Plaintiff filed a motion in which he asked for a "final extension" of five (5) days in which to file his response, and promised that it would be mailed on or before August 17, 2005.  [18-1]  The Plaintiff did not receive the undersigned's Report filed on August 15, and it was returned to the Clerk of Court on August 23, 2005.  [19-1]

Thereafter, on September 1, 2005, the Plaintiff filed a motion which requested an additional extension of twenty-one (21) days in which to file a response to the Defendants' Motion for Summary Judgment.  [20-1]  On September 6, 2005, the Honorable Henry F. Floyd, United States District Judge for the District of South Carolina, remanded this case to the undersigned for disposition on the merits, as it appeared that the Plaintiff had not abandoned his action.  [21-1]  On September 7, 2005, the Defendants filed an opposition to Plaintiff's second request for an extension of time.  [22-1]  On September 12, 2005, Plaintiff filed an objection (dated September 8, 2005) to the undersigned's Report, and indicated that he wished to respond to Defendants' Motion for Summary Judgment.  [25-1]

On September 16, 2005, the undersigned issued an Order which granted Plaintiff's

motions for an extension of time and extended the Plaintiff's deadline for filing a response to September 30, 2005. The Order specifically stated that no additional extensions of time would be granted. [26-1]

On October 4, 2005, having not received any pleading from the Plaintiff in opposition to Defendants' Motion for Summary Judgment, the undersigned issued a Report and Recommendation which outlined the procedural history to date and concluded that the Plaintiff no longer wished to pursue the action. Accordingly, the Report and Recommendation suggested that the District Court dismiss the suit for lack of prosecution pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. [27-1] Meanwhile, on September 29, 2005, one day before the Plaintiff's response to the Defendants' motion was due, Plaintiff filed a motion in opposition to Defendants' Motion for Summary Judgment.[12] Thereafter, on October 12, 2005, Plaintiff filed his Objections to the Report and Recommendation of the undersigned. [29-1] On November 2, 2005, Judge Floyd issued an Order remanding this case to the undersigned for a disposition on the merits. [30-1]

## VI. STANDARD OF REVIEW

The standard of review for determining a motion for summary judgment was cogently articulated in the recent case of Al-Marri v. Hanft, 378 F.Supp. 2d 673, 675-76 (D.S.C. 2005). Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be

---

[12] The Plaintiff's certificate of service was dated September 29, 2005, and the envelope in which the Plaintiff's pleading was mailed was date-stamped as received by the KCI mailroom on October 5, 2005 and postmarked on that same day. The Plaintiff's pleading was addressed to the Clerk of Court in Charleston and filed with the court on October 11, 2005.

rendered forth with if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The adverse party must show more than "some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586, 106 S.Ct. 1348. If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. 2548. Hence, the granting of summary judgment involves a three-tier analysis. First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. Fed. R. Civ. P. 56(e). An issue is



genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Second, the Court must ascertain whether that genuine issue pertains to material facts. Fed. R. Civ. P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. Anderson, 477 U.S. at 248, 106 S.Ct. 2505. Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. Fed. R. Civ. P. 56(e).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327, 106 S.Ct. 2548. The primary issue is whether the material facts present a sufficient disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. Anderson, 477 U.S. at 251-52, 106 S.Ct. 2505. The substantive law of the case identifies which facts are material. Id. at 248, 106 S.Ct. 2505. Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment. Al-Marri v. Hanft, 378 F.Supp. 2d at 675-76.



## VII. ANALYSIS

### A. Plaintiff's Section 1983 Claim

It is well-settled that Section 1983 "'is not itself a source of substantive rights,' but merely provides a 'method for vindicating federal rights elsewhere conferred.'" Albright v.

Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994), *quoting* Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979). "The essential elements to be proved in any section 1983 action are (1) that the defendant was acting under color of state law in the actions complained of; and (2) that the defendant deprived Plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." Clark v. Link, 855 F.2d 156, 161 (4th Cir. 1988), *citing* Briley v. State of California, 564 F.2d 849, 853 (9th Cir. 1977). Thus, "[t]he first step in any such claim is identify the specific constitutional right allegedly infringed." Albright, 510 U.S. at 271, 114 S.Ct. at 811, *citing* Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870 (1989). "If there is no violation of a federal right, there is no basis for a section 1983 action and no answer to a plea by the public officer of qualified immunity." Clark, 855 F.2d at 161.

"The touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution[.]" Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 690, 98 S.Ct. 2018, 2036 (1978). "The plaintiff must show that such policy or custom amounted to 'deliberate indifference' to their constitutional rights." Washington v. Whitaker, 317 S.C. 108, 113, 451 S.E.2d 894, 897 (1994), *citing* Pembaur v. Cincinnati, 475 U.S. 469, 106 S.Ct. 1292 (1986); Todd v. Smith, 305 S.C. 227, 407 S.E.2d 644 (1991).

As discussed more fully below, construing Plaintiff's pleadings liberally, as this court is compelled to do given his *pro se* status, the Plaintiff has failed to create a genuine issue of

material fact as to the alleged violation of any federal right and has failed to allege that any such

violation was the result of any policy or custom of the Greenville County Sheriff's Department.

Accordingly, his claims must fail.

### 1. Plaintiff's Allegations of Violations of the Fourth, Fifth, and Sixth Amendment Rights, Made Applicable to the States by the Fourteenth Amendment

Plaintiff alleges that his arrest and detention were unlawful because there was no probable

cause for his arrest, in violation of his Fourth and Fifth Amendment rights. Plaintiff further

alleges that he was denied his right to counsel, in violation of the Sixth Amendment. Based upon

the facts of this case, Plaintiff's allegations are without merit.

#### a. The Fourth Amendment

The Fourth Amendment to the federal Constitution guarantees the right to be free from

unreasonable search and seizure. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and
> effects, against unreasonable searches and seizures, shall not be
> violated, and no Warrant shall issue, but upon probable cause, supported
> by Oath or affirmation, and particularly describing the place to be
> searched, and the persons or things to be seized.

 "This amendment requires that arrests be made based upon probable cause and that a

neutral and detached judicial officer evaluate probable cause as a condition of significant pretrial

restraint of liberty." Taylor v. Waters, 81 F.3d 429, 436 (4th Cir. 1996), *citing* Gerstein v. Pugh,

420 U.S. 103, 114, 95 S.Ct. 854, 863 (1975). Simply stated, a police officer may not arrest an

individual without probable cause to believe a crime has been committed. *See* Wilson v. Kittoe,

337 F.3d 392, 397 (4th Cir. 2003). Probable cause exists "where the facts and circumstances

within the officer's knowledge are sufficient for a person to believe that a crime has been or is being committed by the person to be arrested." United States v. Miller, 925 F.2d 695, 698 (4th Cir. 1991), *cert. denied,* 502 U.S. 833, 112 S.Ct. 111 (1991); Taylor, 81 F.3d at 434. It is the Plaintiff's burden to establish want of probable cause. White v. Coleman, 277 F.Supp. 292, 297 (D.S.C. 1967). "If probable cause was lacking, then [a plaintiff] has successfully asserted the violation of . . . his Fourth Amendment right against unreasonable seizure." Wilson, 337 F.3d at 397.

With respect to the evaluation undertaken by a "detached judicial officer" (*see* Taylor), a court will determine whether probable cause exists to support an arrest by undertaking a "totality-of-the-circumstances analysis." Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329 (1983); Taylor, 81 F.3d at 434. "Once such a determination of probable cause has been rendered, however, the Fourth Amendment does not impose any further requirement of judicial oversight or reasonable investigation to render pretrial seizure reasonable." Taylor, 81 F.3d at 434, *citing* Baker v. McCollan, 443 U.S. 137, 143-46, 99 S.Ct. 2689, 2694 (1979); Gerstein, 420 U.S. at 118-19, 95 S.Ct. at 865-66.

In the case *sub judice*, the arrest warrant for Plaintiff was based upon information obtained by Defendant Rodgers during his investigation of the Jamaican drug trafficking organization operating in Greenville, South Carolina. After being presented with the evidence, South Carolina Magistrate Dean Ford, a "neutral and detached judicial officer", made a judicial determination that there was, in fact, probable cause for the arrest of the Plaintiff for conspiracy

to traffic cocaine (in excess of 400 grams), in violation of S.C. Code § 44-53-370.[13]  Thus,

Plaintiff was arrested pursuant to a constitutionally valid arrest warrant.  The Fourth Circuit has

"held that a public official cannot be charged with false arrest when he arrests a defendant

pursuant to a facially valid warrant."  Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998), citing

Brooks v. City of Winston-Salem, 85 F.3d 178 (4th Cir. 1996).  The Defendants could not have

committed a tort of false arrest in violation of the Fourth Amendment because they were acting

pursuant to a facially valid arrest warrant.  Porterfield, 156 F.3d at 568.  Thus, it is recommended

that the Defendants be granted summary judgment as a matter of law as to Plaintiff's Fourth

Amendment claims.

### b. The Fifth Amendment

Plaintiff's Section 1983 complaint also appears to allege a violation of his Fifth

Amendment right against self-incrimination.  According to the Plaintiff, after his arrest, he was

taken to the Sheriff's Department, and, as his complaint alleges:

> At that point the Sheriff . . . began an interrogation.  I then relayed to them that I had no idea as to the
> questions they were asking and asked then to speak with an attorney.  These deputies and/or the sheriff
> never advised me of my rights and continued to ask me questions.[14]

Of course, whether Plaintiff's Fifth Amendment claim against the Defendants is barred by

qualified immunity is evaluated through a two-part inquiry.  Burrell v. Virginia, 395 F.3d 508,

512 (4th Cir. 2005).  "First, [the] court must consider whether the facts alleged show that the

officer's conduct violated a constitutional right; if so, [the court] must consider whether that

---

[13]    See Exhibit A (Arrest Warrant for Michael Smith), attached to Respondents' Memorandum.  [12-1]

[14]    See Complaint [1-1] at pp. 3-4.  Plaintiff does not appear to have addressed his Fifth Amendment
claim in his Memorandum in opposition to Defendants' Motion for Summary Judgment.  [28-1]

constitutional right was clearly established." Id., *citing* Saucier v. Katz, 533 U.S. 194, 200-01,

121 S.Ct. 2151 (2001). "If the challenged conduct did violate a clearly established constitutional

right, qualified immunity does not bar the suit." Burrell, 395 F.3d at 512, *citing* Saucier, 533

U.S. at 200, 202, 121 S.Ct. 2151.

However, before this court can embark on that inquiry, it first must review the facts of

this case. Although Plaintiff alleges that his Fifth Amendment rights were violated, it remains

that the Plaintiff was not prosecuted as a result of his arrest. Thus, the case at bar is similar to

Chavez v. Martinez, 538 U.S. 760, 123 S.Ct. 1994 (2003), wherein that plaintiff was allegedly

coercively interrogated, but was never prosecuted based on that interrogation. Chavez, 538 U.S.

at 763-64, 123 S.Ct. 1994. The Supreme Court in Chavez, in a plurality opinion, held that

Chavez' Section 1983 action failed to state a claim with respect to a violation of the Fifth

Amendment.[15] As Judge Luttig recently explained in Burrell v. Virginia, 395 F.3d 508 (4th Cir.

2005),[16] "[a] four-member plurality of the [Chavez] Court concluded that 'a violation of the

constitutional *right* against self-incrimination occurs *only* if one has been compelled to be a

witness against himself in a criminal case.'" Burrell, 395 F.3d at 513, *quoting* Chavez, 538 U.S.

at 770, 123 S.Ct. 1994 (first emphasis in Chavez; second emphasis added in Burrell). Indeed,

Justices Souter and Breyer, although not joining the plurality, agreed in Chavez that "the text of

---

[15]     The Supreme Court left open on remand the question of whether the plaintiff could pursue a claim
for a violation of substantive due process. Chavez, 538 U.S. at 779-80, 123 S.Ct. 1994 (Souter,
J.). As Judge Luttig noted in Burrell, it was not clear whether Burrell's claim of a due process
violation was intended to be a substantive due process violation; regardless, he did not allege that
the police behavior "shocks the conscience" nor that it was "unusually coercive." Burrell, 395 F.3d
at 513, n.3, *citing* Chavez, 538 U.S. at 787, 123 S.Ct. 1994 (Souter, J.).

[16]     Judge Luttig wrote the opinion, in which Judge Motz and Judge Duncan joined.

the Fifth Amendment [applied to the states pursuant to the Fourteenth Amendment] focuses on

*courtroom use* of a criminal defendant's compelled, self-incriminating testimony, and the core of

the guarantee against compelled self-incrimination is the exclusion of such evidence." <u>Chavez</u>,

538 U.S. at 777, 123 S.Ct. 1994 (Souter, J.) (emphasis added) (footnote omitted).

In conclusion, because Plaintiff was not prosecuted as a result of his October 28, 2002

arrest, he cannot assert that his rights under the Fifth Amendment were violated.  It is

recommended that the Defendants be granted summary judgment as a matter of law with respect

to Plaintiff's Fifth Amendment claims.

### c. The Sixth Amendment

Plaintiff also alleges in his complaint that he did not receive a lawyer after he requested

one.[17]  However, Defendants contend that Attorney Daniel J. Farnsworth was appointed to

represent Plaintiff on October 29, 2002, one day after he was arrested.[18]  Plaintiff has not set forth

any facts to dispute Defendants' assertion.[19]  Therefore, it is recommended that the Defendants be

granted summary judgment as a matter of law regarding Plaintiff's Sixth Amendment claims.

### B.  State Law Claims

### 1.  Defendants are Immune from Suit on state law claims in Federal Court

In addition to Plaintiff's claims brought pursuant to Section 1983, Plaintiff is also



---

[17]     *See* Complaint [1-1] at p. 4.

[18]     Plaintiff and Defendants agree that Plaintiff was arrested on October 28, 2002.  *See* Plaintiff's
         Complaint [1-1] at p. 3 *and* Defendants' Answer [10-1] at ¶ 1.

[19]     Plaintiff has not argued his Sixth Amendment claim in his Memorandum in opposition to
         Defendants' Motion for Summary Judgment.  [28-1]

alleging state law claims against the Defendants for false arrest and malicious prosecution.

States cannot be sued in Federal Court pursuant to the Eleventh Amendment of the United States

Constitution. Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S.Ct. 1347 (1974). Suing a state

employee or officer in his official capacity is tantamount to suing the state. Will v. Michigan,

491 U.S. 58, 64, 109 S.Ct. 2304 (1989) (holding that a State is not a person within the meaning

of Section 1983). Furthermore, states and state officials are not persons, and therefore, not

subject to suit under 42 U.S.C. Section 1983. Monell v. Dept. of Social Services of the City of

New York, 436 U.S. 658, 98 S.Ct. 2018 (1978). The Supreme Court has reasoned that a suit

against a state employee in his or her official capacity for monetary damages is the same as suing

the state for such damages. Id.

In South Carolina, a sheriff, and his deputies, are state actors. *See* Heath v. County of

Aiken, 295 S.C. 416, 418-19 & nn. 1, 3, 368 S.E.2d 904, 905 & nn. 1, 3 (1988). Thus, a suit

against them in federal court in their official capacities is barred by the Eleventh Amendment.

McConnell v. Adams, 829 F.2d 1319, 1328- 29 (4th Cir.1987), *cert. denied*, 100 L.Ed.2d 195

(1988). For example, in Gulledge v. Smart, 691 F.Supp. 947 (D.S.C. 1988), *aff'd* 878 F.2d 379

(4th Cir. 1989) (*per curiam* unpublished table decision), it was held that the Sheriff of York

County, South Carolina, was not a county official, but an official of the State of South Carolina,

and thus, county sheriffs and their deputies enjoyed Eleventh Amendment immunity from federal

civil rights lawsuits. Id.; see also Cone v. Nettles, 308 S.C. 109, 417 S.E.2d 523 (S.C. 1992)

(South Carolina Supreme Court held that a sheriff or a deputy sheriff could not be held liable in

his official capacity for monetary damages under federal civil rights statute).  Furthermore, Plaintiff has not set forth any evidence to suggest that the Defendants were acting outside the scope and course of their employment with the Greenville County Sheriff's Department.  As the evidence of record makes clear, Defendants were, at all relevant times, acting as agents or employees of a political subdivision of the State of South Carolina and therefore are immune pursuant to the Eleventh Amendment from suit in federal court for acts committed as officials of the State of South Carolina.

Plaintiff's state law claim for false arrest also fails because claims against the state on the basis of state law may not be litigated in Federal Court unless the state has waived its Eleventh Amendment immunity.  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 121, 104 S.Ct. 900 (1984).  The State of South Carolina has waived its sovereign immunity only under certain specified circumstances with the enactment of the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10, et seq. ("the Act").  Employees of the State or its subdivisions are subject to the Act for the performance of their official duties.  An employee is defined as "any officer, employee, or agent of the State or its political subdivisions, including . . . law enforcement officers."  S.C. Code Ann. § 15-78-30(c) (emphasis added).  The Act is the exclusive and sole remedy for any tort allegedly committed by an employee of a governmental entity while acting within the scope of his official duties.  S.C. Code Ann.  § 15-78-200 (emphasis added).  The Act further states that "nothing in this chapter is to be construed as a waiver of the state's or political subdivision's immunity from suit in federal court under the Eleventh Amendment to the



Constitution of the United States nor as consent to be sued in any state beyond the boundaries of the State of South Carolina." S.C. Code Ann. § 15-78-20. Accordingly, to the extent that the Defendants are being sued in their official capacities, Plaintiff's state law claim is barred by the Eleventh Amendment.

### a. Unlawful Arrest and Detention

Even if the reviewing court were to determine that Plaintiff had stated a valid cause of action under federal law, and therefore may proceed against Defendants on his supplemental state law claims alleged, Plaintiff nonetheless has failed to state a claim for false imprisonment, which he describes in the Complaint as unlawful arrest and detention.[20] False imprisonment is "deprivation of a person's liberty without justification." Caldwell v. K-Mart Corp., 306 S.C. 27, 30, 410 S.E.2d 21, 23 (Ct.App.1991). An action for false imprisonment may not be maintained where the plaintiff was arrested by a lawful authority. Jones v. City of Columbia, 301 S.C. 62, 389 S.E.2d 662 (1990). Law enforcement officials have broad authorization to arrest. S.C. Code Ann. § 17-13-30. The fundamental issue in determining the lawfulness of an arrest is whether there was "probable cause" to make the arrest. Wortman v. Spartanburg, 310 S.C. 1, 425 S.E.2d 18 (1992). As discussed above, the Plaintiff's arrest was effected through a constitutionally valid arrest warrant, obtained upon a finding of probable cause by a neutral and detached judicial officer. Therefore, no action for false arrest can lie against Defendants, and they are entitled to summary judgment on Plaintiff's claim for false arrest. See, e.g.., Bushardt v. United Inv. Co.,

---

[20]    See Complaint [1-1] at p. 2.

121 S.C. 324, 113 S.E.637 (1922) (if an arrest is based on probable cause or a proper warrant, no action for false imprisonment will succeed).

### b. Malicious Prosecution

As mentioned above, Section 1983 is not itself a source of substantive rights. *See* <u>Baker v. McCollan</u>, 443 U.S. 137, 144, 99 S.Ct. 2689 (1979). Given this well-settled principle, the Fourth Circuit has recognized that "there is no such thing as a Section 1983 malicious prosecution claim." <u>Lambert v. William</u>, 223 F.3d 257, 262 (4th Cir. 2000). Instead, the appropriate Section 1983 claim in this case is "a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution[.]" <u>Id.</u>, *citing* <u>Brooks v. City of Winston-Salem</u>, 85 F.3d 178, 183 (4th Cir.1996) (footnote omitted).

In South Carolina, a plaintiff must prove six elements in order to be successful in an action for malicious prosecution:



    (1) the institution or continuation of original judicial proceedings, either civil or criminal;

    (2) by, or at the instance of, the defendants;

    (3) termination of such proceedings in plaintiff's favor;

    (4) malice in instituting the proceedings;

    (5) lack of probable cause; and

    (6) resulting injury or damage.

<u>Jordan v. Deese</u>, 317 S.C. 260, 261, 452 S.E.2d 838, 839 (1995); <u>Gaar v. North Myrtle Beach Realty Co.</u>, 287 S.C. 525, 339 S.E.2d 887 (Ct.App.1986).

In the present case, Plaintiff cannot state a cause of action for malicious prosecution because he is unable to prove either the malice or the probable cause prongs of this cause of

action. Malice is defined as "the deliberate intentional doing of a wrongful act without just cause

or excuse." Margolis v. Telech, 239 S.C. 232, 122 S.E.2d 417 (1961). Malice is an essential

element of malicious prosecution. Truett v. Georgeson, 273 S.C. 661, 258 S.E.2d 499 (1979)

(*per curiam*). Plaintiff has set forth no evidence that his arrest was prompted by malice on the

part of any of the Defendants.

Next, as has been discussed above, the Plaintiff's arrest was based on probable cause and

executed pursuant to a valid arrest warrant. The South Carolina Supreme Court has stated that

when determining whether there was probable cause for instituting a criminal prosecution, only

those facts and circumstances which were or should have been known to the prosecuting witness

at the time he instituted the prosecution should be considered. Brown v. Bailey, 215 S.C. 175, 54

S.E.2d 769 (1949). In this case, the evidence shows that Defendant Rodgers had obtained

evidence implicating the Plaintiff in a drug trafficking organization. Thus, at the time the

warrant was issued, there was probable cause to arrest the Plaintiff.



In conclusion, the Plaintiff has produced no evidence that any of the Defendants acted

with malice, and no evidence to suggest that his arrest was undertaken without probable cause.

Thus, Defendants were justified in arresting Plaintiff, and it is recommended that the Defendants

be granted summary judgment on Plaintiff's claim for malicious prosecution.

### C. Qualified Immunity

As another defense, Defendants argue that they are entitled to qualified immunity on the

issue of whether they had probable cause to arrest and detain Plaintiff. Whether a government

official performing a discretionary function is entitled to qualified immunity is a question of law for the Court. Willingham v. Crooke, 412 F.3d 553, 559 (4th Cir. 2005). To establish entitlement to qualified immunity, that government official must demonstrate that his "conduct does not violate clearly established constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In other words, when making a determination on the issue of qualified immunity, a court must (1) determine whether a constitutional right would have been violated on the facts alleged and (2) consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right. Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002). Further, to overcome qualified immunity, a court must find that the alleged facts demonstrate that "the established contours of probable cause were sufficiently clear at the time of the seizure such that the unlawfulness of the officers' actions would have been apparent to reasonable officers." S.P. v. City of Takoma Park, 134 F.3d 260, 266 (4th Cir.1998). In the present case, probable cause had been established, and there is nothing in the record to suggest that the Defendants' actions were unlawful. Therefore, the Defendants are entitled to summary judgment on the grounds of qualified immunity.



## VIII.  THE PRISON LITIGATION REFORM ACT

The Prison Litigation Reform Act (the "PLRA"), which amended 28 U.S.C. § 1915, states that federal courts shall dismiss actions filed *in forma pauperis* if, at any time, the Court

determines that the action is frivolous, malicious, or fails to state a claim upon which relief can

be granted. See 28 U.S.C. § 1915(e)(2)(B). Congress has recognized that a litigant "whose filing

fees are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain

from filing frivolous, malicious or repetitive lawsuits." Cain v. Commonwealth of Virginia, 982

F.Supp. 1132, 1136 (E.D.Va. 1997), quoting Neitzke v. Williams, 490 U.S. 319, 324 (1989).

The purpose of Section 1915(g) thus acts as a limitation upon the number of *in forma pauperis*

actions that may be filed by an inmate at the expense of the public.[21]

Federal courts have a responsibility to assess the nature of the allegations presented in a

civil action and determine whether the plaintiff's motive is to harass and vex the defendants or to

seek redress for a legitimate claim. Cain, 982 F.Supp. at 1136 (quotations and citations omitted).

A complaint abusive of the judicial process is malicious within the meaning of Section 1915. Id.,

*citing* Ballentine v. Crawford, 563 F.Supp. 627, 629 (N.D.Ind. 1983) (referring to Section

1915(d), now Section 1915(e)(2)).

This Court is of the opinion that Plaintiff's allegations are frivolous and malicious under

the PLRA, 28 U.S.C. § 1915(e)(2)(B)(1), and should be summarily dismissed under 28 U.S.C.

1915A(b). Furthermore, this dismissal should be deemed a "strike" under the "three strike" rule

of the PLRA, as set forth in 28 U.S.C. § 1915(g).

---

[21] "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

## RECOMMENDATION

Based upon the foregoing, it is recommended that the Defendants' **Motion for Summary Judgment [12-1] be granted**.

The undersigned also is of the opinion that Plaintiff's complaint is "frivolous" within the contemplation of 28 U.S.C. §1915(e)(2)(B)(i) and suggests that **Plaintiff's action be deemed a "strike"** under the "three strike" rule of the PLRA.  28 U.S.C. § 1915(g).

George C. Kosko
United States Magistrate Judge

November *17*, 2005
Charleston, South Carolina

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must** *specifically identify* **the portions of the Report and Recommendation to which objections are made** *and* **the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on

Page 25 of 26

other issues. <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509 (6th Cir. 1991). *See also*
<u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal
factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).
In <u>Howard</u>, <u>supra</u>, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same
> effects as would a failure to object. The district court's attention is not focused on
> any specific issues for review, thereby making the initial reference to the
> [magistrate judge] useless. * * * This duplication of time and effort wastes judicial
> resources rather than saving them, and runs contrary to the purposes of the
> Magistrates Act. * * * We would hardly countenance an appellant's brief simply
> objecting to the district court's determination without explaining the source of the
> error.**

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that
the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal
that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating
> only 'I object' preserves no issue for review. * * * A district judge should not have
> to guess what arguments an objecting party depends on when reviewing a
> [magistrate judge's] report.**

*See also* <u>Branch v. Martin</u>, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections
are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7
n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file
specific, written objections.** *See* <u>Wright v. Collins</u>, <u>supra</u>; and <u>Small v. Secretary of HHS</u>, 892
F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by
mailing objections addressed as follows:

**Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

Page 26 of 26
